UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>vs.<br><br>JOSE LUIS PIMENTEL,<br><br>      Defendant. | Memorandum Decision in Support of Order Granting Defendant's Motion for Review of Detention<br><br><br><br>Case No. 2:19-CR-300-HCN-EJF |

    The Court writes this Memorandum Decision in support of its Order granting Defendant Jose Luis Pimentel's Motion to Review Detention (ECF No. 42).  Upon reopening the detention hearing, the Court finds Mr. Pimentel has shown that his temporary release is necessary for the preparation of his defense and for his health pursuant to 18 U.S.C. § 3142(i).  Under the circumstances described below the Court finds it can impose conditions that will reasonably assure Mr. Pimentel's appearance back at court and the safety of the community.  Therefore, the Court ORDERS Mr. Pimentel temporarily released on the conditions set forth below.

**I.  PROCEDURAL POSTURE**

    The Government began this case on July 29, 2019 with a complaint.  (ECF No. 1.)  On August 2, 2019, Mr. Pimentel was arrested and made his initial appearance in federal court.  (ECF Nos. 4 & 8.)  At the initial appearance, the United States orally moved for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(C), claiming Mr. Pimentel posed an unmanageable risk of danger to the community and flight having, at that time, been charged with three counts of distribution of methamphetamine.  Mr. Pimentel opposed detention and requested an extended continuance to allow him to prepare for the detention hearing.  (ECF No. 4.)  The

Court found good cause, set the detention hearing for August 12, 2019, and temporarily detained Mr. Pimentel in Marshal's custody. (ECF No. 7.)

August 12, 2019, the Court held a detention hearing. (ECF No. 12.) At that hearing, the Court found Mr. Pimentel had rebutted the presumption of detention but nonetheless posed an unmanageable risk of flight. (ECF No. 13.) In reaching this decision, the Court cited the following factors, the potential lengthy period of incarceration if convicted, that the charged crime carries a presumption of detention, the weight of the evidence given the involvement of an undercover officer and the impact of a conviction on Mr. Pimentel's immigration status, the history of substance abuse, the recent deportation of Mr. Pimentel's wife to Mexico, and his lack of legal status in the United States.

The Grand Jury subsequently indicted Mr. Pimentel on the three counts of distribution in addition to using a firearm in relation to a drug trafficking crime, possession of methamphetamine with intent to distribute, and illegal alien in possession of a firearm. (ECF No. 14.) The Court initial set trial for October 22, 2019, (ECF No. 17); on Mr. Pimentel's motion, the Court continued the trial date initially until January 28, 2020, (ECF No. 26), and then on a stipulated motion continued the trial again until April 14, 2020. (ECF No. 28). On April 3, 2020, the District Judge continued the trial until May 19, 2020 based on the District's General Order 20-009 cancelling all jury trials until May 1, 2020.

## II.     MATERIAL CHANGE WARRANTING REOPENING OF DETENTION HEARING

On April 22, 2020, Mr. Pimentel filed a Motion for Review of Detention based on the threat to his health from COVID-19 given his high blood pressure and his difficulty preparing for trial. (Mot. to Review Detention & Request for Hearing ("Mot."), ECF No. 33.) The Government opposed reopening the hearing because it contends Mr. Pimentel failed to make an argument particular to himself regarding the change in circumstances: that is COVID-19 happened to

everyone, and not everyone is entitled to a review of detention. (Opp'n to Def.'s Mot. to Review Detention ("Opp'n"), ECF No. 38.) On April 28, 2020, the Court had a telephonic hearing, pursuant to the CARES Act and General Orders 20-010 and -011, with counsel for the parties, an interpreter, and Mr. Pimentel present and with the consent of the parties.

To reopen the issue of detention, the movant must demonstrate that information exists, not known to the movant at the detention hearing, "that has a material bearing on the issue" of release. 18 U.S.C. § 3142(f). Without question, the movant could not have known of the COVID-19 virus in August of 2019, the risks it poses to him, or the effect it would have on his ability to defend himself. Thus, the Court finds changed circumstances warrant reconsideration of the detention decision. See United States v. Ramos, No. 18-cr-30009-FDS, 2020 WL 1478307, *1 (D. Mass. Mar. 26, 2020) (unpublished) (reconsidering prior detention based on changed circumstances of the COVID-19 pandemic); United States v. Stephens, No. 15-cr-95 (AJN), 2020 WL 1295155, *1-2 (S.D.N.Y. Mar. 19, 2020) (unpublished) (finding reconsideration of detention appropriate in part based on the changed circumstances of the COVID-19 pandemic).

Additionally, under 18 U.S.C. § 3142(i), the Court may temporarily release a person in pretrial detention if release is "necessary for preparation of the person's defense or for another compelling reason." In this case, Mr. Pimentel's counsel indicates that Mr. Pimentel has high blood pressure and high cholesterol making him vulnerable to COVID-19 and that Mr. Pimentel's counsel's preparation of the case has been hampered by the inability to communicate privately with Mr. Pimentel. (Mot. 2, 6, ECF No. 33.) Thus, 18 U.S.C. § 3142(i) provides a basis for the Court to reconsider its decision to enable it to modify the decision. See United States v. Chandler, No. 1:19-cr-867 (PAC), 2020 WL 1528120, *2 (S.D.N.Y. Mar. 31, 2020) (unpublished) (finding "18 U.S.C. § 3142(i) provides a sufficient and independent ground

for granting temporary release"); United States v. Kennedy, No. 18-20315, 2020 WL 1493481, *3, (E.D. Mich. Mar. 27, 2020) (unpublished) (holding after issuing a detention order court may issue a subsequent temporary release pursuant to 18 U.S.C. § 3142(i)) (upheld by 2020 WL 1547878, *2 (E.D. Mich. April 1, 2020) (finding 18 U.S.C. § 3142(i) provides separate statutory authority to release defendants held in Marshal's custody)); Stephens, 2020 WL 1295155, *2 (finding even absent a change in circumstances under 18 U.S.C. § 3142(f), subsection (i) provides an independent basis for release).

Lastly, the Court always has the authority to reconsider its prior rulings while a case remains pending under the inherent powers of the court. Spring Creek Exploration & Production Co. v. Hess Badden Invests., II, LLC, 887 F.3d 1003, 1023 (10th Cir. 2018).

For all these reasons, the Court agrees to reconsider the issue of detention.

### III.   TEMPORARY RELEASE

Following the detention of a defendant pretrial, the Court may "permit the temporary release of the person, . . . , to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Mr. Pimentel has been in federal pretrial detention since August 2, 2019. The trial in this case was set for April 14, 2020, and on April 3, 2020, the District Judge continued the trial until May 19, 2020 based on the District's General Order 20-009 cancelling all jury trials until May 1, 2020. On the same day as the hearing in this matter, the District issued another General Order, 20-012, again cancelling all jury trials, this time until June 15, 2020. Both these General Orders reflect this District's attempt to respond to the COVID-19 pandemic. Mr. Pimentel's trial will thus be postponed again.

Furthermore, General Order 20-011 postpones changes of plea because of the risk to public health and safety unless further delay seriously harms the interests of justice, in which case the court can take the plea by video or teleconference if the parties consent.  Thus, if Mr. Pimentel chose not to go to trial and to plead guilty instead, he could likely not do that until after June 15, 2020 either.

According to the Government, the jails contracting with the Federal Government have ceased in-person visitation and are not transporting defendants to or from the courthouse. (Opp'n 9-10, ECF No. 38.)  Mr. Pimentel cannot consult with his attorney privately.  (Mot. 6, ECF No. 33.)  Counsel explains that "[t]he main communication right now between counsel and defendant involves the use of telephones and video conferences which are placed in the middle of the housing unit open to the hearing of all other inmates."  (Id.)  These developments delay preparation for trial or resolution of the case by plea.  If Mr. Pimentel were released from custody, he would avoid some of the delay because he could confer privately with his attorney so that when trial or a plea could go forward they would be able to move quickly to resolution. "The extraordinary burdens imposed by the coronavirus pandemic, in conjunction with [the defendant]'s right to prepare for his defense, certainly constitute a 'compelling reason' that permits this Court to order the temporary release of [the defendant] pursuant to 18 U.S.C. § 3142(i)."  Chandler, 2020 WL 1528120, *2; see also Kennedy, 2020 WL 1493481, *4 ("Even if Defendant did not have a heightened susceptibility to COVID-19, the public health crisis—and its impact on Defendant's ability to present a defense—nonetheless satisfies § 3142(i).") (upheld by 2020 WL 1547878, *4 (E.D. Mich. April 1, 2020)); Stephens, 2020 WL 1295155, *3 (finding inability to consult with counsel constitutes a compelling reason for temporary release).

In addition to the impediments to Mr. Pimentel preparing his defense, Mr. Pimentel faces a heightened risk of contracting COVID-19 and/or more significant consequences if he does. As noted, Mr. Pimentel has high blood pressure and high cholesterol and will be 49 at the end of next month.  The CDC recognizes that individuals with heart disease face a higher risk of contracting COVID-19 and potentially more severe consequences, including death.  (CDC, Coronavirus Disease 2019 (COVID-19):  Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions, last visited April 28, 2020; Decl. of Dr. Jaimie Meyer, ¶ 21, ECF No. 33-1.)  High blood pressure and high blood cholesterol "are key risk factors for heart disease," which often goes undiagnosed until a person experiences a heart attack.  CDC, About Heart Disease, https://www.cdc.gov/heartdisease/about.htm, last visited April 28, 2020.  The World Health Organization finds high blood pressure (also known as hypertension) puts people at the "highest risk for severe disease and death" from COVID-19.  United States v. Rodriguez, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, *7 (E.D. Pa. April 1, 2020) (unpublished) (quoting Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 24, 2020), at 12, https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf, last visited April 29, 2020 and recognizing conflicting findings regarding high blood pressure at n. 15). Furthermore, jails are particularly susceptible to virus outbreaks.  (Decl. of Dr. Jaimie Meyer, ¶¶ 7-19, ECF No. 33-1.)  High blood pressure, among other factors, provides a compelling reason under § 3142(i) for release from pretrial detention during the COVID-19 pandemic.  United States v. Hernandez, No. 19 Cr. 169 (VM), 2020 WL 1503106, *1 (S.D.N.Y. Mar. 30, 2020).  The Court finds Mr. Pimentel's age, health condition, and need to consult with counsel combined provide compelling reasons to release him under 18 U.S.C. § 3142(i).

**IV.     RISK OF NON-APPEARANCE BACK AT COURT FOR FURTHER PROCEEDINGS AND RISK OF DANGER TO THE COMMUNITY.**

At the initial detention hearing in this matter the Court found it could impose conditions that would reasonably assure the safety of the community particularly in light of Mr. Pimentel's limited and old criminal history (a 2005 misdemeanor conviction for attempted possession of a controlled substance) and long period of sobriety (ten years).  At that hearing the Court found, however, that Mr. Pimentel posed an unmanageable risk of flight.  Mr. Pimentel contends he does not wish to leave the district, has a place to stay here with his family, and does not pose a risk of danger to the community.

The Court finds the COVID-19 pandemic makes Mr. Pimentel less of a risk of nonappearance.  He has a strong incentive to abide by conditions of release so that Mr. Pimentel can remain out of custody and able to help his family and protect himself and his family from contracting COVID-19.  While Mr. Pimentel's wife has been deported, he has three children living here in the home to which he plans to return.  At the time of the original hearing his children were 23, 17, and 14.  With schools relying on parents to assist with on-line education, and Mr. Pimentel's oldest child having to work to support the family, Mr. Pimentel's supervision of his youngest children becomes very important to their health and future success, creating a significant incentive for Mr. Pimentel to remain in Utah.  The Court also notes that Pretrial Services has previously had contact with the oldest of Mr. Pimentel's children.

Further travel during this time, creates significant risk of exposure to COVID-19, thus also deterring Mr. Pimentel from fleeing the jurisdiction.  <u>Ramos</u>, 2020 WL 1478307, *2.  Additionally, Mr. Pimentel has had an approximately eight-month period of forced sobriety.  Lastly, Mr. Pimentel has no reported history of removal.  Thus, remaining in Utah and defending against this charge provides the only avenue to avoid significantly adverse immigration consequences and additional criminal charges.

## V.  CONDITIONS CAN REASONABLY TO ASSURE APPEARANCE AT COURT AND THE SAFETY OF THE COMMUNITY IN THESE CIRCUMSTANCES

Mr. Pimentel poses a risk of nonappearance back at court.  Mr. Pimentel lacks legal status in the United States, has family in Mexico, has lived there before, and speaks Spanish.  Under these circumstances, a risk exists that Mr. Pimentel will not return to court to see these charges through in an attempt to evade both removal and any potential criminal consequences.

To guard against the risk that Mr. Pimentel will choose to abscond, the least restrictive means necessary reasonably to assure his reappearance include the following conditions:

1. Ordering Mr. Pimentel to maintain his current residence and not change his address without prior permission of the pretrial officer, not travel outside of Utah without prior permission of the pretrial officer, and not travel outside of the United States without the Court's permission.
2. Requiring reporting to the pretrial officer as directed by that officer.
3. Placing Mr. Pimentel on a home detention.
4. Monitoring Mr. Pimentel's location by the method determined by Pretrial Services to be most appropriate, to start within forty-eight hours of release.

To the extent a defendant subject to deportation poses a risk of nonappearance, that risk falls fully within the control of the Executive Branch.  ICE regulations provide that "departure" from the United States of any alien within certain categories shall be deemed prejudicial to the interests of the United States.  8 C.F.R. § 215.2(a) provides "No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3."  8 C.F.R. § 215.3 sets forth the types of people whose

departure from the United States would be prejudicial to the interests of the United States, and subsection g specifically calls out

> [a]ny alien who is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States: *Provided*, That any alien who is a witness in, or a party to, any criminal case pending in any criminal court proceeding may be permitted to depart from the United States with the consent of the appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part.

8 C.F.R. § 215.1 does define "depart" and places no limits on the definition based on voluntariness. Thus, the U.S. Attorney's Office has control over whether a criminal defendant will be removed. United States v. Rodriguez, No.13-CR-20126-01-CM, 2013 WL 6904074, at *2 (D. Kan. Dec. 31, 2013). The Government has proffered in another case, United States v. Barrera-Landa, No. 2:20-cr-85-HCN-EJF, that the Government could apply for a defendant to have a visa to stay in the country pending resolution of the criminal case and that the United States Attorney's Office for the District of Utah had previously obtained such visas for victims and witnesses of alleged crimes. Given the cooperation between ICE and the United States Attorney's Office generally, the Court does not anticipate a problem in this area. See United States v. Resendiz-Guevara, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. 2015) ("In light of Section 215.3(g) and that initially there was cooperation between ICE and the U.S. Attorney's office here, the Court believes that the Government must show why it lacked the ability to prevent Defendant's departure through a stay or departure control".) Likewise, what ICE does upon release of Mr. Pimentel does not make him a risk of failing to appear. See United States v. Ailon-Ailon, 875 F.3d 1334, 1337 (10th Cir. 2017).

The Court finds that the above discussed conditions will reasonable assure Mr. Pimentel's appearance back at court.

The Court also finds that a combination of conditions will reasonably assure the safety of the community. The already discussed conditions of location monitoring and home detention will help to monitor Mr. Pimentel's compliance with the law. The Court also finds that a prohibition on possession of any kind of firearm, ammunition destructive device, or other dangerous weapon further reduces any potential danger to the public. The Court also requires Mr. Pimental to submit to drug testing and drug treatment if deemed necessary by pretrial. Given the age of Mr. Pimentel's only criminal charge and the length of time since that incident, the Court finds the risk of danger manageable with conditions.

The Court grants temporary release until the end of the pandemic or resolution of the case by plea or trial, at which time the Court will reevaluate Mr. Pimentel's release. Recognizing the burdens on health care providers at this time may delay obtaining medical records, the Court orders Mr. Pimentel to provide documentation of his health conditions at that time of reconsideration.

## V.     MOTION TO ENJOIN ICE FROM TAKING MR. PIMENTEL INTO CUSTODY

Counsel for Mr. Pimentel moved orally, to enjoin ICE from taking Mr. Pimentel into custody. The United States opposed the Motion. The Court agrees with the circuits that have considered the issue and held that the United States does have the authority to proceed down both tracks of immigration and criminal prosecution, including permitting ICE detention after a grant of criminal pretrial release. United States v. Pacheco-Poo, 952 F.3d 950, 952 (8th Cir. 2020) (upholding denial of dismissal of criminal action for detention by ICE pending criminal case despite pretrial release and removal eleven days after sentencing to time served); United States v. Lett, 944 F.3d 467, 469 (2d Cir. 2019) ("[W]e hold that immigration authorities may lawfully detain a criminal defendant ordered to be released under the BRA pursuant to their

authority under the INA"); United States v. Soriano Nunez, 928 F.3d 240, 245 n.4 (3d Cir. 2019) (finding the Bail Reform Act and the Immigration and Naturalization Act perform separate functions, for separate purposes and can coexist); United States v. Vasquez Benitez, 919 F.3d 546, 553–54 (D.C. Cir. 2019) ("So long as ICE detains the alien for the permissible purpose of effectuating his removal and not to 'skirt [the] Court's decision [in] setting the terms of [his] release under the B[ail] R[eform] A[ct],' ICE's detention does not offend separation-of-powers principles simply because a federal court acting pursuant to the BRA has ordered that same alien released pending his criminal trial."); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018) (overturning district court's enjoining ICE from detaining defendant after pretrial release in a concurrent criminal case).  Therefore, the Court denied Mr. Pimentel's Motion to Enjoin.

The Court does think removal prior to the completion of the criminal case would pose separation of powers, Due Process, and Speedy Trial Act issues.  Given the Court's release order, and the ability of the U.S. Attorney's Office to apply for Mr. Pimentel to remain in the country pending the completion of the criminal trial, the Court ORDERS the U.S. Attorney's Office to make such an application to ensure Mr. Pimentel will not be removed from the United States prior to trial.

## CONCLUSION

The Court ORDERS Mr. Pimentel temporarily released under 18 U.S.C. § 3142(i) because temporary release is necessary both for the preparation of his defense and for his health.

Dated April 29, 2020.

                                  BY THE COURT:

                                  _____
                                  Evelyn J. Furse
                                  United States Magistrate Judge